WEBSTER TREAT, administrator

*vs.*

FRANKLIN TREAT and another.

Waldo.    Opinion February 1, 1888.

*Probate practice.    Executor and administrator.*

An administrator is bound by a decree of the Supreme Court of probate directing him to enter in his account of administration the proceeds of real estate sold by him for the heirs.

ON report.

An appeal from the decree of the probate court in the matter of the settlement of the account of the appellant, as administrator of the estate of Robert Treat, deceased.

The opinion states the facts.

*A. W. Paine*, for appellant.

No inventory was ever filed, the omission to do so being according to the wish of the parties concerned.    This, however, affords no objection as has been directly decided by the court. *Pettingill* v. *Pettingill*, 60 Maine, 411; *Nelson* v. *Juques*, 1 Glf. 139, and no objection is made on that account.

Is the claim barred by statute of limitations?  This is readily answered and conclusively so by the fact that there is no statute limiting claims of an administrator against the estate, nor *vice versa*.    The statute limiting suits in probate matters is confined to suits brought by creditors against the administrator. *Bancroft* v. *Andrews*, 6 Cush. 493 ; *Johnson* v. *Ames*, 11 Pick. 180.    It was early settled by our court that probate accounts were not subject to the statute of limitations.    *Heald* v. *Heald*, 5 Glf. 387, in which the court distinctly hold that the statute is confined to civil actions and does not apply to proceedings in probate.

The same principle was again affirmed afterwards in *Nowell* v. *Bragdon*, 14 Maine, 320.    See also the case of *Richmond Admr.* 2 Pick. 567.    The case of *Potter* v. *Titcomb*, 7 Glf. 303,

confirms the same principle and the reasons given fully apply to the position taken by me, that as the administrator is the party on both sides no presumption of payment can be made and hence no bar. In *Greene* v. *Dyer*, ?2 Maine, 460, the same doctrine is again affirmed. The recent case of *Smith* v. *Wells*, 134 Mass. 11, is one where nine years delay had occurred, but in spite of the statute of limitations the court enforced the claim. The statute not applicable to such cases.

All mistakes and errors in former accounts should be rectified and settled. This mode of settlement is not only equitable but legal; our courts have so decided. In the case of *Stearns* v. *Stearns*, 1 Pick. 157, the court corrected a similar error even after the account had been fully passed upon and allowed and recorded. And how to correct such an error the court teaches in another case. *Stevens* v. *Gaylord*, 11 Mass. 269, in which the court substantially settle the doctrine that if one comes into possession of money as administrator, and has a debt against his estate, he can offset the one against the other. 1 Salk. 306, in which Lord HOLT says, if the administrator, having no assets, pays a debt of his intestate, to the amount of what he himself owed, this would be a release. In *Hatch* v. *Greene*, 12 Mass. 195, a mistake was made in the account settled and being afterward detected was corrected even to the prejudice of an assignee who had bought the fund in reliance upon the probate. There the error was corrected by an offset which an equitable principle suggested. That is like our case precisely. In *Ipswich Co.* v. *Story*, 5 Met. 313, the principle is settled that where the administrator is debtor to the estate his debt is regarded as paid and he in funds to that extent, as he cannot sue himself and when the same hand is to pay and receive money, that which the law requires to be done shall be deemed to be done. 1 B. and P. 630: 9 B. and C. 130.

These cases would seem to point to the same conclusion as already arrived at, viz: that when the administrator here had a demand against the estate for the three thousand two hundred dollars, and became possessed of the collection of the three thousand nine hundred and thirty-eight dollars and six cents, the

law applied the one to the satisfaction of the other *pro tanto*, leaving only the balance whichever way it might be for future consideration.  When he got funds he should pay and stop interest. *Forward* v. *Forward*,. 6 Allen, 494.

Is an administrator chargeable in the settlement of his administration account in probate with money received by him, while acting as agent of all the heirs, for the conveyance of real estate executed by the heirs to respective purchasers?

That an administrator has no control or power over real estate by virtue of his office as such, no right to sell or otherwise dispose of or interfere with it, except when wanted to pay debts and then only under license of court specially obtained, is a principle which is too well recognized to need any citation of authority.  The statute regulating the settlement of estates is demonstrative of this principle of law and the multitude of authorities are unanimous to the same point.  Beginning with *Nelson* v. *Jaques*, 1 Glf. 142, and cases cited in same, our reports are full of it.  The able and exhaustive discussion of this whole matter makes the subject all so plain in *Kimball* v. *Sumner*, 62 Maine, 310, that it would seem nothing additional need be said and none can make the subject more plain.

. The fact that an administrator cannot be licensed, even for the sale of real estate without giving a new bond, is a complete refutation of the idea that he can get the money and make his administration liable for the sales of real estate under his bond as administrator, even by consent of the heirs or by their agreement.  *Robinson* v. *Millard*, 133 Mass. 236.

The heirs or appellees think they find support for their position in the decree which the court filed in the case and which is made a part of it.  The passage referred to is as follows, viz: "The court below to enquire and determine what sums have been received from the real estate by said accountant as agent of the heirs and to allow any such not already properly accounted for."

Though this language might be construed to support the heirs' position, yet taking everything into consideration, the meaning is very clearly that he is to allow "what was received from the real estate," not for real estate—that is, he is to allow the rents

which have been derived from the real estate by him as agent under an agreement to account for them as administrator as before explained. The court in drawing the decree, had evidently in mind the principles which had been so elaborately and correctly worked out in *Kimball* v. *Sumner*, 62 Maine, 310, already cited. With that interpretation the law and justice of the case are both satisfied, while with the interpretation placed upon it by the apellee, both are outraged. In such case we except to the correctness of the decree, and ask to be heard upon the question, a right which the court will readily grant us.

*W. P. Whitehouse*, with whom was *W. H. Fogler*, for the defendants, cited: *Fay* v. *Taylor*, 2 Gray, 154; *Stearns* v. *Stearns*, 1 Pick. 159; *Kimball* v. *Sumner*, 62 Maine, 309; *Littlefield* v. *Eaton*, 74 Maine, 522; 125 Mass. 307; Schoul. Ex'rs, 539; *Stiver* v. *Stiver*, 8 Ohio, 221; 2 Wms. Ex'rs, 817; *Com.* v. *Stub*, 11 Pa. 150 (51 Am. Dec. 519); *Pettingill* v. *Pettingill*, 60 Maine, 411; *Storer* v. *Storer*, 9 Mass. 37; *Preble* v. *Preble*, 73 Maine, 362; *Wadleigh* v. *Jordan*, 74 Maine, 483; *Payne* v. *Pusey*, 8 Bush, 564; Wood, Lim. Act. 389; *Lancey* v. *White*, 68 Maine, 28; 24 N. H. 400; *Nowell* v. *Bragdon*, 14 Maine, 324; *Ricard* v. *Williams*, 7 Wheat. 116 (5 L. ed. 412); *Gross* v. *Howard*, 52 Maine, 192.

EMERY, J. Robert Treat, of Frankfort, died intestate and solvent, in 1859 leaving a widow and several children. His oldest son, Webster Treat, the appellant, was appointed administrator December, 1859. He filed no inventory, and by arrangement with the widow and heirs, he was to make a division of the personal estate in specie, as soon as practicable (there being few if any debts), and was to receive one thousand dollars per year as compensation therefor. Such a division was made in December, 1860, though the formal quittances were not executed till February 14, 1861.

The widow's dower was in the meantime set out to her, the reversion remaining undivided. From time to time, Webster Treat sold parcels of the dower estate, including the reversion,

as agent for the widow and heirs, they all signing the deeds. He received the proceeds of these sales.

After the issue of the letters of administration, the authority of the probate court was not invoked in the matter of this estate till July, 1881, when Webster Treat filed an administration account. This account was allowed in the absence of contest at the July term, 1882, a large balance appearing to be due to the administrator. In May, 1884, some of the heirs, the widow having died, petitioned the probate court to open the account for corrections and new settlement. The probate court denying the petition, an appeal was taken to the Supreme Court of probate. At the April term, 1886, in Waldo county, the Supreme Court, upon this appeal, decreed—that the account should be opened; that the administrator should be charged with a certain additional stated sum and interest; and that he should also be charged with the proceeds of the real estate sold by him for the heirs as above described, so far as he had not already accounted for them.

At the August term, 1886, of the probate court after this decree, the administrator filed a new and additional account, and thereupon the probate court passed upon the whole account. Four matters only seemed to have been seriously questioned.

1. The administrator charged for compensation as per arrangement up to time of division and settlement in February, 1861, alleging that he omitted to deduct it at the time, and had never received it. The probate court disallowed this charge.

2. The administrator charged one thousand dollars for services since the division. The probate court disallowed this charge, and allowed instead a commission of five per cent on sums received.

3. The administrator claimed as a creditor of the estate, three thousand two hundred dollars, and interest for an error in computation in the accounts between him and the intestate in the lifetime of the latter in March, 1854. The probate court disallowed this item.

4. The court charged the administrator with the proceeds of the sales of four parcels of real estate out of the lands set out as

dower. The controversy here was whether Webster had properly accounted for the proceeds. He claimed that he credited them all to the widow, by the direction of the heirs. They claimed, however, that he was to pay the income only to the widow during her life, and was to pay the principal to the heirs after her death.

Webster appealed from the decree of the probate court, settling the account as above, and the whole case and evidence has been reported to the law court. Though numerous reasons of appeal were stated, the affirmance or reversal of the decree depends upon the determination of the four matters above stated.

It is evident that the questions presented are almost entirely of fact. Mooted questions of law would be immaterial, if not presented by the facts finally found. The case was argued orally and the justices before separating, considered the evidence and the arguments carefully, and were unaminous in their conclusions upon all the questions. The case was held however for a re-examination of the testimony and the briefs, which re-examination has been made and has not changed our conclusions.

Upon our finding of the facts, the only question of law raised that calls for notice, is whether an administrator can be charged in his administration account for the proceeds of real estate sold by him as agent for the heirs. But even this question is immaterial in this case. The Supreme Court of probate, upon proper proceedings in the matter of this very account, had already decreed,—that this administrator should so account in his administration account. He took no appeal, nor exceptions, and made no effort to procure a reversal or modification of the decree. That decree still stands and controls this case. The probate court properly followed it. Whether the sureties upon the administrators bond are bound by such a decree is a question to be raised by them.

It only remains to announce our conclusions upon the facts, which we state briefly, without giving our analysis of the evidence, which is seldom if ever advisable.

1.   We think the administrator has received his agreed compensation for services up to February 14, 1861.

2.   We find nothing in the case entitling him to more than the commission of five per cent after February, 1861.

3.   We think the error in computation in the accounts between Webster, (the administrator) and Robert Treat (the intestate) in March, 1854, was undoubtedly adjusted.

4.   We think the appellant had no authority from all the heirs to credit to the widow the principal of the proceeds of the real estate sold, and hence that such a credit to the widow did not discharge him, in this account.

It follows that the decree of the probate court must be affirmed.

It is suggested that one or more of the heirs have already received part or all of his share of such proceeds of real estate. If so, of course, such heir must credit the administrator with such sum and interest, in the distribution of the estate. It is also suggested that one or more of the heirs did direct the appellant to pay or credit to the widow the principal of the said proceeds, even if all did not. If so, such crediting in pursuance of his instructions may bind such heir, as a payment made to his order, and be reckoned with the interest as a payment to him, in the distribution. These are matters between the administrator and the individual heirs or distributees, not between him and the estate, and hence are not properly cognizable by us in this proceeding.

*Decree affirmed with costs.   Case remitted*
*to probate court.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and HASKELL, JJ., concurred.